IN THE SUPREME COURT OF NORTH CAROLINA

No. 333PA24

Filed 14 August 2026

KATHLEEN K. FACE

v.

S. ALLEN FACE

On discretionary review pursuant to N.C.G.S. § 7A-31(c) of a unanimous decision of the Court of Appeals, 296 N.C. App. 306 (2024), affirming the trial court's indicative ruling entered on 6 September 2023, affirming the alimony judgment and order entered on 11 January 2022, and reversing in part the equitable distribution order entered on 28 December 2021 by Judge J. Calvin Chandler in District Court, Brunswick County, and remanding the case for correction of a clerical error in the equitable distribution order. Heard in the Supreme Court on 18 February 2026.

*Ward and Smith, P.A., by Christopher S. Edwards, John M. Martin, J. Albert Clyburn, and Alex C. Dale, for plaintiff-appellee.*

*Jonathan McGirt for defendant-appellant.*

BARRINGER, Justice.

This case presents a question of first impression for this Court: whether under Rule 19 a revocable trust must be joined to an equitable distribution proceeding where all settlors of the trust are named parties to the proceeding. The answer is no. A judgment against the settlors concerning property held in a revocable trust will effectively bind the revocable trust without interfering with anyone else's rights.

Thus, Rule 19 principles do not compel joinder of the revocable trust. We therefore modify and affirm the judgment of the Court of Appeals.

## I.    Background

Plaintiff Kathleen Face and defendant Allen Face married on 11 May 2007. The parties separated on 17 July 2014 and ultimately divorced on 9 November 2015.

During their marriage, plaintiff and defendant conveyed three properties into the S. Allen Face, III and Kathleen K. Face Revocable Trust Dated September 15, 2011 (the Revocable Trust). The three properties held in the Revocable Trust included: (1) 316 Sea Star Circle, (2) 1009 Lismore Way, and (3) 311 Cottage Lane. The Revocable Trust instrument designated both plaintiff and defendant as co-trustees, sole beneficiaries, and settlors.

The Revocable Trust's written terms provided that plaintiff and defendant, as settlors of the Revocable Trust, retained the absolute right to "change the beneficiaries, their respective shares and the plan of distribution; amend [the Revocable] Trust in any other respect; or[ ] revoke [the Revocable] Trust in its entirety or any provision therein," so long as the right was exercised "by instruments signed by both [Settlors] and delivered to the Trustee." After their separation, the parties sold 316 Sea Star Circle and 311 Cottage Lane to third parties; 1009 Lismore Way remained in the Revocable Trust.

Also, after their separation, each of the parties asserted claims for equitable distribution. In a signed pretrial order, plaintiff and defendant stipulated their

agreement to several facts and issues. Notably, the pretrial order "stipulated that all parties ha[d] been correctly designated and there [was] no question as to misjoinder or nonjoinder of parties." The pretrial order further stipulated that the three properties were marital property, that the proceeds from 316 Sea Star Circle and 311 Cottage Lane would be divided between the parties, and that plaintiff would take title to 1009 Lismore Way. The trial court then entered its Equitable Distribution Order, distributing the three properties as the parties had stipulated. Defendant appealed the Equitable Distribution Order.

During the pendency of that appeal, defendant filed a Motion to Set Aside Orders Pursuant to N.C. R. Civ. P. 60(b) (Rule 60 Motion). In the Rule 60 Motion, defendant argued "that the trial court did not have subject matter jurisdiction to adjudicate the ownership of the properties at 316 Sea Star Circle, 1009 Lismore Way, and/or 311 Cottage Lane," because the Revocable Trust was a "necessary party" under Rule 19 of the North Carolina Rules of Civil Procedure.

The trial court rejected defendant's Rule 60 Motion by entering an Indicative Ruling Denying Defendant's Motion to Set Aside Orders Pursuant to N.C. R. Civ. P. 60(b) (Indicative Ruling). Defendant filed a petition for writ of certiorari at the Court of Appeals, seeking review of the Indicative Ruling. The court allowed defendant's petition.

The Court of Appeals reviewed both the Equitable Distribution Order and the

Indicative Ruling.[1] The court affirmed the Equitable Distribution Order in substantial part, reversing it only as to the trial court's "double-counting" of previously distributed marital property. *Face v. Face*, 296 N.C. App. 306, 322 (2024). Determining that the double-counting was a mere "clerical error," the Court of Appeals remanded the case to the trial court for correction. *Id.*

As for the Indicative Ruling, the Court of Appeals fully affirmed it. *Id.* at 318. The court reasoned that when plaintiff and defendant—the Revocable Trust's settlors—stipulated that the three properties were marital property, they effectively revoked the Revocable Trust. *Id.* Being revoked, the Revocable Trust "was not a necessary party to the equitable distribution proceeding." *Id.*

Defendant filed a petition for discretionary review with this Court. We allowed review, but only as to the issues related to necessary joinder of the Revocable Trust. *Face v. Face*, 388 N.C. 517 (2025) (order).

## II.    Standard of Review

"[T]he standard of review of a trial court's denial of a Rule 60(b) motion is abuse of discretion." *Davis v. Davis*, 360 N.C. 518, 523 (2006). However, when a trial court's determination necessarily turns on a question of law, that determination is reviewed de novo. "Interpreting the Rules of Civil Procedure is a matter of statutory

---

[1] The Court of Appeals also reviewed and affirmed an Alimony Judgment and Order (Alimony Order) entered by the trial court and appealed by defendant. *Face v. Face*, 296 N.C. App. 306, 323–24 (2024). The Alimony Order has no bearing on the issues presented here.

interpretation and thus a question of law reviewed de novo." *Jay v. Jay*, 389 N.C. 61, 65 (2026).

As for matters where the trial court sits without a jury, "the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Cherry Cmty. Org. v. Sellars*, 381 N.C. 239, 251–52 (2022) (quoting *Shepard v. Bonita Vista Props., L.P.*, 191 N.C. App. 614, 616 (2008), *aff'd per curiam*, 363 N.C. 252 (2009)).

## III.    Analysis

### A. Subject Matter Jurisdiction and North Carolina Rule of Civil Procedure 19

Rule 19 requires the joinder of necessary parties to an action. The rule provides that "those who are united in interest must be joined as plaintiffs or defendants." N.C.G.S. § 1A-1, Rule 19(a) (2025).

The Court of Appeals characterized a court's failure to join a necessary party as an issue concerning its "subject matter jurisdiction." *Face*, 296 N.C. App. at 317. Before this Court, plaintiff contests that characterization. Plaintiff explains that necessary joinder relates to "the power to administer complete relief between the parties," whereas subject matter jurisdiction "refers to a court's power to hear and resolve a claim" based on the complaint's allegations. We agree with plaintiff and hold that the failure to join a necessary party pursuant to Rule 19 is not an issue of subject matter jurisdiction.

Our holding is not novel. In fact, the Court of Appeals itself has held as much. *See Stancil v. Bruce Stancil Refrig., Inc.*, 81 N.C. App. 567, 573 (1986) ("[A] failure to join a necessary party does not result in a lack of jurisdiction over the subject matter of the proceeding."). To be sure, subject matter jurisdiction is conferred by our constitution and General Assembly. N.C. Const. art. IV, § 12; *McLaughlin v. Martin*, 92 N.C. App. 368, 370 (1988) ("[S]ubject matter jurisdiction is . . . granted by . . . the General Assembly.").

By enacting § 7A-244 of the General Statutes of North Carolina, the General Assembly granted district courts exclusive subject matter jurisdiction over equitable distribution actions. N.C.G.S. § 7A-244 (2025). Jurisdiction is not lost simply because a trial court may later struggle to provide complete relief without joining a third party. *See Nation Ford Baptist Church Inc. v. Davis*, 382 N.C. 115, 127 (2022) ("[A] court must only assure itself that *any* of the plaintiff's claims can possibly be adjudicated and that *any* form of relief can possibly be granted—if so, the court has jurisdiction to proceed on those claims.").

Even our rules of civil procedure recognize this point. Rule 12 permits parties to move to dismiss a claim or complaint on the basis of a "[f]ailure to join a necessary party" and, separately, on the basis of a "[l]ack of jurisdiction over the subject matter." N.C.G.S. § 1A-1, Rule 12(b)(1), (7) (2025). If the failure to join a necessary party deprived a trial court of subject matter jurisdiction, then it would be wholly unnecessary for Rule 12 to separately list the two bases. Clearly, then, our rules of

civil procedure compel the conclusion that the failure to join a necessary party does not result in a lack of jurisdiction over the subject matter of the proceeding. For these reasons, the trial court here possessed jurisdiction over the parties' equitable distribution claims.

Characterizing this issue as distinct from subject matter jurisdiction is significant, because unlike most issues, "subject matter jurisdiction is not waivable and can be raised at any time," even on appeal. *In re K.J.L.*, 363 N.C. 343, 346 (2009). Yet, despite being distinct from subject matter jurisdiction, courts have nevertheless been hesitant to deem Rule 19 challenges waived.

Over a century ago, we explained that "[t]his Court has sometimes upon its own motion ordered a new trial and remanded a cause when it appeared that a necessary party was missing from the case . . . and that manifest justice required a new trial." *Vaughan & Barnes v. Davenport*, 159 N.C. 369, 371 (1912).[2] Our hesitation to deem a necessary party argument waived has been reaffirmed time and again in our caselaw, *see Edmondson v. Henderson*, 246 N.C. 634, 637 (1957); *Town of*

---

[2] Federal courts take a similar approach as well. The Supreme Court of the United States, in applying the federal Rule 19, directed that "[w]hen necessary . . . a court of appeals should, on its own initiative, take steps to protect the absent party, who of course had no opportunity to plead and prove his interest below." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 111 (1968). The federal courts of appeals have taken this statement to mean that their courts may raise Rule 19 issues on their own and may do so for the first time on appeal. *See, e.g.*, *NLRB v. Doug Neal Mgmt. Co.*, 620 F.2d 1133, 1139 (6th Cir. 1980); *see also Enter. Mgmt. Consultants, Inc. v. U.S. ex rel. Hodel*, 883 F.2d 890, 892–93 (10th Cir. 1989) (collecting cases).

We acknowledge, however, that under North Carolina law, there is no mandatory requirement for an appellate court to correct a necessary joinder defect on its own motion before ruling on the merits. *M.E. v. T.J.*, 380 N.C. 539, 564 (2022).

*Morganton v. Hutton & Bourbonnais Co.*, 247 N.C. 666, 668 (1958), although not invariably, *see Lanier v. Pullman Co.*, 180 N.C. 406, 410 (1920) (" 'If the defendant deemed the trustee a necessary party,' . . . 'he should have demurred, and his failure to do so was a waiver.' " (quoting *Watkins v. Kaolin Mfg. Co.*, 131 N.C. 536, 538 (1902))).

In this case, we find it prudent to review defendant's Rule 19 argument despite his failure to raise the argument at his first opportunity to do so. Fundamentally, for an equitable distribution proceeding to function properly, it is essential to accurately identify the title and interest of the property subject to distribution. Accordingly, we decline to deem it waived in this instance.

**B. The Revocable Trust and North Carolina Rule of Civil Procedure 19**

The Court of Appeals held that the Revocable Trust had been revoked by the pretrial stipulations. However, we do not address the effect of these pretrial stipulations on the existence of the Revocable Trust. Instead, we resolve this case through the application of a straightforward, categorical rule: when all settlors of a revocable trust are named parties to an equitable distribution proceeding, Rule 19 does not require joinder of the revocable trust.

Defendant's principal argument on appeal is that such a rule would conflict with "[t]he leading case on this issue"—*Upchurch v. Upchurch*, 122 N.C. App. 172 (1996). *Upchurch* held that "when a third party holds legal title to property which is claimed to be marital property, that third party is a necessary party to the equitable

distribution proceeding, with their participation limited to the issue of ownership of that property." *Id.* at 176. The *Upchurch* court then reversed the trial court's equitable distribution order and remanded the case for the trial court to consider whether a constructive or resulting trust—either of which being an *irrevocable* trust—held legal title to the distributed property. *Id.* at 176–77. If so, the *Upchurch* court directed the trial court to join the trust under Rule 19. *Id.* However, *Upchurch* concerned an *irrevocable* trust, not a revocable trust. Under Rule 19 principles, the *Upchurch* rule is ill-suited in this case.[3]

As previously stated, Rule 19 provides that "those who are united in interest must be joined as plaintiffs or defendants." N.C.G.S. § 1A-1, Rule 19(a). A person united in interest with a party is a "necessary party to the action"—that is, a party "so vitally interested in the controversy that a valid judgment cannot be rendered in the action completely and finally . . . without his presence." *Strickland v. Hughes*, 273 N.C. 481, 485 (1968). "A sound criterion" for discerning whether a party's interest is sufficiently vital to an action is found in the following definition: "Necessary parties are those persons who have rights which must be ascertained and settled before the rights of the parties to the suit can be determined." *Equitable Life Assurance Soc'y of the U.S. v. Basnight*, 234 N.C. 347, 352 (1951).

---

[3] To the extent the Court of Appeals held otherwise in *Wenninger v. Wenninger*, 293 N.C. App. 791 (2024), it is overruled. From this Court's close review, the legally significant distinction between a revocable trust and irrevocable trust was never briefed by the parties in *Wenninger*.

Rule 19 is designed to join interested parties to an action so that a court may issue a judgment completely, thus finally determining a claim. Critically, a party not joined to an action is not bound by the trial court's judgment in that action. Thus, Rule 19 joins interested parties to provide "complete administration" of their rights. *W.F. Kornegay & Co. v. Farmers & Merchs. Steamboat Co.*, 107 N.C. 115, 118 (1890).

Rule 19's necessary party rule harkens back to the "father of systematic equity"—Lord Nottingham, the Lord Keeper and Lord Chancellor of England from 1673 to 1682. Geoffrey C. Hazard Jr., *Indispensable Party: The Historical Origin of a Procedural Phantom*, 61 Colum. L. Rev. 1254, 1256 (1961) (extraneity omitted). Not long after the establishment of our courts, North Carolina adopted the rule, citing to the Court of Chancery. *See, e.g., Marshall v. Lovelass*, 1 N.C. (Cam. & Nor.) 412, 428–29 (1801); *see also Southal v. Shields*, 81 N.C. 28, 30 (1879) ("We understand the rule and practice of courts of equity under our former system and equally so under our present system of courts, to be, . . . the duty of the [c]ourt, to require that all proper parties be before the [c]ourt . . . ."). Thus, Rule 19 is firmly rooted in equity.

Equity is "practical" and "seeks to reach and do complete justice where courts of law, through the inflexibility of their rules[,] . . . are incompetent to do so." *Moore v. Moore*, 297 N.C. 14, 16 (1979) (quoting *Zebulon v. Dawson*, 216 N.C. 520, 522 (1939)). Our necessary party rule has embraced these pragmatic roots. Decades before this Court had even been established, then-Judge Hall, sitting in court of conference, recognized that while "[i]t is regularly true that all persons interested should be made

parties by name," there are certainly exceptions to this "good general rule." *Marshall*, 1 N.C. (Cam. & Nor.) at 428. Practical considerations of joining a necessary party shape these exceptions. For example, this Court refused to require joinder of a person concerned in interest with the suit where that person had "moved away and not since [been] heard of for many years." *See Ingram v. Lanier*, 2 N.C. (1 Hayw.) 221, 221 (1795) (per curiam). Accordingly, while Rule 19 generally requires that all necessary parties be joined in an action, equity demands that the courts also engage in practical inquiries.

With these principles in mind, we turn now to whether Rule 19 compels joinder of the Revocable Trust to the equitable distribution proceeding. To resolve this question, it is important to engage in a practical inquiry; that is, what is the legal relationship between a settlor and a revocable trust?

A settlor retains complete, exclusive control over a revocable trust's property for life. North Carolina's Uniform Trust Code provides that the "rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed *exclusively* to, the settlor [of the revocable trust]." N.C.G.S. § 36C-6-603(a) (2025) (emphasis added). Moreover, "[i]f a trustee is a settlor, the trustee's actions are presumed to be taken *at the direction of* the settlor." *Id.* (emphasis added).

The settlor's control of a revocable trust is absolute. Even trustees must comply with the settlor's commands. "[T]he settlor of a revocable trust has, *at all times*, the power to direct or consent to the actions of the trustee whether or not the power is

conferred upon the settlor by the terms of the trust." *Id.* § 36C-8-808 (2025) (emphasis added). The settlor's power to direct the actions of the trustee extends to directions that are "not authorized by or [are] contrary to the terms of the trust." *Id.* § 36C-8-808(1). Thus, under North Carolina law, a revocable trust is owned and controlled exclusively by its settlor.

This complete, exclusive control over the trust blurs the distinction between property belonging to the revocable trust and property belonging to its settlor. Under both federal and state revenue law, a revocable trust's income is taxed to its settlor—even if the revenue is paid to someone else. *Corliss v. Bowers*, 281 U.S. 376, 378 (1930); N.C.G.S. § 105-160.5 (2025). The reason being that actual command over a trust (i.e., power of revocation) is akin to ownership. As such, a revocable trust's income must be reported and filed on its settlor's tax return. Unlike limited liability companies or irrevocable trusts, for instance, no separate tax identification number is assigned to a revocable trust. *See* 26 U.S.C. §§ 641(a), 6012(a)(4); 26 C.F.R. § 301.6109-1(a)(2). Thus, tax law makes clear that a revocable trust's property is not separate and distinct from its settlor's.

The same can be said for bankruptcy law. Federal courts characterize property held in a revocable trust as indistinguishable from the individual settlor's property for purposes of estate inclusion. 11 U.S.C. § 541(a)(1); *see also* Alan B. Clements, *Revocable Trusts in Motion: Designing Governance for Authority Transitions*, 53 Est.

Plan. 01, 16 (2026), Westlaw 53 ESTPLN 01, at *23 (stating the same).[4] Thus, bankruptcy law, too, discerns no meaningful distinction between property held in a revocable trust and property held individually by its settlor.

In essence, with respect to claims against property, there is little distinction between property held in a revocable trust and property held individually by the settlors. When settlors are named parties to a judgment, they are bound by it. Trust law provides settlors complete, exclusive control over a revocable trust. Therefore, a judgment against the settlors concerning property held in a revocable trust will effectively bind the revocable trust without interfering with anyone else's rights.

Our dissenting colleague takes issue with our decision to address this joinder issue rather than focus on the effect of the pretrial stipulations. In so doing, the dissent asserts that we have "turn[ed] a blind eye to the revocation issue." However, the dissent loses sight of what this case is ultimately about. Critically, this is a case about joinder, not revocation.

Once parties are joined, and thus bound by a judgment, (or in this case, an equitable distribution order) they must then take additional steps to carry out the judgment. Just as a trial court may order parties to a proceeding to transfer real property pursuant to N.C.G.S. § 50-20(g), so too may it order settlors to distribute the

---

[4] As we do here, bankruptcy law also recognizes an important legal distinction between a revocable trust and an irrevocable trust: A debtor's property that is not subject to the power of revocation for the debtor's own benefit is excluded from the debtor's estate. 11 U.S.C. § 541(b)(1).

corpus of a revocable trust in accordance with N.C.G.S. § 36C-6-602(c) (2025). Accordingly, the dissent's fixation on statutory compliance misconstrues the question before us. We are in no way holding, as the dissent contends, that "a trust may be revoked without satisfying any mechanism for revocation in § 36C-6-602(c)." Rather, we merely hold that Rule 19 does not compel *joining* a revocable trust when all settlors are named parties to the proceeding. The judgment's execution may still be effectuated in compliance with our statutory mandates.

For the reasons stated herein, we embrace Rule 19's pragmatic roots and hold that a revocable trust need not be joined in an equitable distribution proceeding when its settlors are named parties.

## IV.    Conclusion

Our practical Rule 19 inquiry confirms that complete justice may be done without joining a revocable trust where all its settlors are named parties to an equitable distribution proceeding. For these reasons, we modify and affirm the Court of Appeals' judgment in accordance with this opinion.

MODIFIED AND AFFIRMED.

Justice BERGER dissenting.

Our General Statutes describe the particular means by which a settlor may revoke or amend a revocable trust. *See* N.C.G.S. § 36C-6-602(b), (c) (2025). But today the majority effectively authors a statutory amendment. According to the majority, so long as "all settlors of a revocable trust are named parties to an equitable distribution proceeding," a trust may be revoked without satisfying any mechanism for revocation in subsection 36C-6-602(c). The majority admits this "blurs the distinction between property belonging to the revocable trust and property belonging to its settlor." Further, according to the majority, Rule 19 does not require the trust itself to be joined as a separate party so long as all the settlors are named parties to a proceeding. Although not admitted by the majority, this brings uncertainty to settled rules of civil procedure. I respectfully dissent.

The statutorily prescribed mechanisms by which a settlor may revoke a revocable trust are precise and limited. *See* N.C.G.S. § 36C-6-602(c). Specifically, revocation or amendment can occur:

> (1) By substantial compliance with a method provided in the terms of the trust; or
>
> (2) If the terms of the trust do not provide a method or the method provided in the terms is not expressly made exclusive, by:
>
>> a. A later will or codicil . . . ; or

    b.  By oral statement to the trustee if the trust was created orally; or

    c.  Any other written method delivered to the trustee manifesting clear and convincing evidence of the settlor's intent.

*Id.*

In this case, the terms of the Trust provided that the settlors may amend or revoke the Trust "by instruments signed by both [settlors] and delivered to the Trustee." The Court of Appeals below concluded that "the pretrial order effectively revoked the Trust." *Face v. Face*, 296 N.C. App. 306, 318 (2024). The Court of Appeals reasoned that "[d]efendant's assent to the pre-trial order manifested 'clear and convincing evidence of the settlor's intent' for the property in the Trust to be distributed between the parties as marital property." *Id.* According to the Court of Appeals,

> the Trust was revocable by either party, and all of the property and proceeds in the Trust were stipulated as marital assets. The parties agreed that the property was titled to them individually and retained complete control over the properties in the Trust. Defendant's assent to the pre-trial order manifested "clear and convincing evidence of the settlor's intent" for the property in the Trust to be distributed between the parties as marital property.

*Id.*

At least the panel below attempted to ground its decision in statutory text. But the majority here, rather than grappling with the revocation issue, declines to "address the effect" of the pretrial stipulations and instead announces a new rule:

"when all settlors of a revocable trust are named parties to an equitable distribution proceeding, Rule 19 does not require joinder of the revocable trust." In answering the joinder question, the majority turns a blind eye to the revocation issue. And despite the attempt to limit application of their new rule, clever lawyers will begin piercing trusts through procedural maneuvering.

Both the panel below and the majority here fail to properly apply the statute. Under the plain text of subsection 36C-6-602(c), the Trust in this case could only be revoked by (1) "substantial compliance" with the method provided in the terms of the Trust or, because that method was not "expressly made exclusive," (2) by "[a]ny other written method delivered to the trustee manifesting clear and convincing evidence of the settlor's intent." N.C.G.S. § 36C-6-602(c). Neither option was satisfied.

The Trust contemplated "instruments signed by both [settlors] and delivered to the Trustee." There is no contention that either party attempted this method for revocation. Instead, the Court of Appeals below relied on the latter option, holding that the pretrial stipulations sufficed as "clear and convincing evidence" of intent to revoke. *Face*, 296 N.C. App. at 318. Both the panel below and the majority here assert that the parties stipulated that the Trust property was marital property. *See id.* But to the contrary, the pretrial stipulation order explicitly stated that "[t]he classification of the property [attached in the exhibit] as either marital, divisible[,] or separate" is one of four "contested issues to be tried by the court." Further, the exhibit "reflects the parties' contentions as to the content, value[,] and proposed distribution

of the marital estate." Such ambiguous language is hardly "clear and convincing evidence" of intent to revoke the Trust under subsection 36C-6-602(c) and instead allows trusts to be revoked by inference or accident.

In addition, the majority's new rule creates an additional concern. Rule 19 states that "those who are united in interest must be joined as plaintiffs or defendants." N.C.G.S. § 1A-1, Rule 19(a) (2025). Under the rule announced today, so long as "all settlors of a revocable trust are named parties to an equitable distribution proceeding, Rule 19 does not require joinder of the revocable trust." Purporting to ground its decision in equity and pragmatism, the majority asserts that "a judgment against the settlors concerning property held in a revocable trust will effectively bind the revocable trust without interfering with anyone else's rights." (emphasis omitted).

Thus, I cannot agree that "there is little distinction between property held in a revocable trust and property held individually by the settlors." And lawyers who practice in the trusts and estates field may disagree, too. Although revocable, a revocable trust still exists as a separate and distinct legal entity, the majority today erases any distinction.